hDOUCET, Chief Judge,
Dissenting:
For the following reasons, I respectfully disagree with the majority in this case.
*712 First, I am reminded of the primary tenet of appellate review:
In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Freeman [v. Poulan/Weed Eater ], 93-1530 at p. 5 [ (La.1/14/94) ], 630 So.2d [733] at 737-738; Stobarb v. State, 617 So.2d 880, 882 (La.1993); Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Where there are two permissible views of the evidence, a factfinder’s choice between them can never be manifestly erroneous or clearly wrong. Stobart, 617 So.2d at 882. Thus, “if the [factfinder’s] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.” Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1112 (La. 1990).
Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, pp. 7-8 (La.7/1/97), 696 So.2d 551, 556.
\9I am also cognizant of the jurisprudence which states that even when the consent of the legitimate parent is unnecessary the adoption may not be granted unless the court finds that it is in the child’s best interest. See Adoption of La-tiolais, 384 So.2d 377 (La.1980). The trial court’s finding as to the best interest of the child is a finding of fact and will not be disturbed on review unless there is no reasonable factual basis for the finding or it is clearly wrong. Arceneaux v. Do-mingue, 365 So.2d 1330 (La.1978).
After reviewing the entire record,, and especially the testimony of the two, non-party witnesses, Joseph LeBlanc and Mrs. Dale Cormier, I cannot say the trial judge was clearly wrong in his determination that it would be in the best interests of the children to grant the adoption. Mr. Le-Blanc testified, among other things, that on one occasion M.D. (the natural mother) had showed up at his home to pick up the children for visitation four and one-half hours late and visibly intoxicated. Mrs. Cormier, a retired teacher, who provides child care and academic help to the children, testified that K.L.H. (the step-mother)is a wonderful mother to K.H. and L.H., who helps them with their school work, attends extra curricular functions with them and loves them as her own. She also testified that the children complain when they have to visit with M.D. and were ecstatic when they found out K.L.H. wanted to adopt them. Additionally, the trial judge interviewed both children in chambers. After reviewing the testimony of the children, I am convinced the trial judge made the right decision. They stated that they wanted to be adopted by K.L.H., that during visits with M.D., she would mostly visit with her friends or watch T.V., that she would drink and drive, and that on at least one occasion, M.D. physically abused K.H..
[.^Further, the law favors Appellees. Appellant, M.D., and her former husband, Tony, had two children: K.H. and L.H.. The couple were divorced in August 1993, with Tony being granted sole custody of the two children and M.D. being ordered to pay child support. Thereafter, on July 4, 1995, Tony married K.L.H., who assumed the role of mother to the two girls. M.D. failed to pay any child support between July 1998 and August 1999. In July 1999, K.L.H. filed the instant petition for adoption. The trial judge found that because the natural mother had failed to support her children for more than one year her consent to the adoption was unnecessary. I note the version of La. Ch. Code art 1245[1] in effect at the time perfi- *713 nent to this case required a one year period in which a parent “failed to comply with a court order of support” before that parent’s permission was no longer necessary for a step-parent to adopt.
In Tutorship of Shea, 619 So.2d 1236, 1241-42 (La.App. 3 Cir.), writ denied, 626 So.2d 1165 (La.1993), we stated:
In order for a parent to avoid the effects of LSA-R.S. 9:422.1 and its successor, Article 1245 of the Louisiana Children’s Code, the support that he provides must be “significant.” An unworthy parent cannot prevent an adoption, which is in the child’s best interests, by making a token payment each year in a nominal sum, which is insufficient to provide for the child’s maintenance and support. In re Ackenhausen, 244 La. 730,154 So.2d 380 (1963).
Whether the support provided is “significant” depends on the particular facts and circumstances of the case under consideration. \ ¿Haynes v. Mangham, 375 So.2d 103 (La.1979). In In re May, 441 So.2d 500, 505 (La.App. 2nd Cir. 1983), writ denied, 449 So.2d 1028 (La. 1984), opinion reinstated, 452 So.2d 800 (La.App. 2nd Cir.1984), writ denied, 458 So.2d 475 (La.1984), the court observed:
“Support in the context of LSA-R.S. 9:422.1 [now La. Ch.Code art. 1245], which the parent must provide in order for his consent to adopt to be necessary, is termed as ‘significant’ support. While each case must be viewed in light of its particular circumstances, significant support has been defined as being something only in the range of twenty to thirty percent of the alimentary obligation. Haynes v. Mangham, 375 So.2d 103 (La.1979); DeRosier v. Dean, 378 So.2d 588 (La.App. 3rd Cir.1979).”
In Haynes v. Mangham, the Louisiana Supreme Court explained:
The interpretation of the language of R.S. 9:422.1 and its application to the facts of this case is not a simple matter. [ ... ]
The language “refused or failed to comply with a court order of support for a period, of one year” can be interpreted in a number of ways: It can be inter.preted on the one extreme so rigorously as to apply even to the parent who pays each month for twelve consecutive months prior to suit, but in each case for an arrearage, so that for the full twelve months he had never been in full compliance with the court order, and on the other extreme so leniently as to permit any payment however small, within twelve months prior to the filing of the petition for adoption and irrespective of the amount of accumulated arrearages, to suffice to prevent application of the statute. Neither 'of these extremes is acceptable.
Required as we are to achieve a result in this litigation by interpreting and applying the statute, we find that a common sense interpretation is the following: If a parent under court order to support a child has not made a significant support payment within a year pri- or to filing of the petition for adoption, that parent loses the right to prevent the adoption by withholding consent.
Haynes, 375 So.2d at 105.
The record establishes that beginning in February of 1996, M.D. was condemned to pay $191.00 per month in child support. By September of 1996, she was already $1,528.00 in arrears. On June 1, 1997, M.D.’s child support obligation |Bwas increased to $418.00 per month. This equates to a total child support obligation, from February 1996 through August 1999, of $13,924.00. At the time of the trial, August 24,1999, K.L.H. testified that M.D. had paid a grand total of $3,713.66 in child support, a figure which would leave M.D. $10,210.34 in arrears. K.L.H. further tes *714 tified that the last child support payment M.D. paid was $96.66 in July 1998. Thus, I am of the opinion that M.D. lost her right to prevent K.L.H.’s adoption of K.H. and L.H. by withholding her consent.
“Once nonpayment of child support is established by the stepparent, the natural parent must demonstrate that he or she had just cause not to pay or that the failure to pay resulted from circumstances beyond his or her control.” In re Acken-hausen, 154 So.2d at 383. The majority address the issue of M.D.’s alleged “just cause” for not paying her child support and concludes that even if her non-payment was unjustified, the adoption should not be allowed to proceed. Considering the amount of arrearage and the fact that M.D.’s last support payment, in July 1998, was only $96.66,1 find no “just cause,” and I disagree with their conclusion that the adoption should not be allowed to proceed.
The majority citing Leger v. Cocearo, 98-202, (La.App. 3 Cir. 4/29/98); 714 So.2d 770, unit denied, 98-1423 (La.7/2/98); 724 So.2d 740, states the provisions of La. Ch.Code art. 1245 are not mandatory. Nevertheless, Leger goes on to say: “However, the adoption should normally be granted in the absence of extenuating circumstances. Ultimately, however, whether an adoption is in the best interest of the child must be decided on the facts of each individual case, and the trial court is vested with great discretion in making that determination.” Id. at p. 8; 714 So.2d 744 (citations omitted). Adoption of Latiolais, 376 So.2d 555 (La.App. 3 Cir.1979), aff'd, lfi384 So.2d 377 (La.1980) which is cited in Leger as authority that the provisions of La. Ch.Code art. 1245 are not mandatory explains as follows:
In our approach to the issue, we first note that the provisions of LSA-R.S. 9:422.1 are not mandatory provisions. •All that the statute does is to dispense with the necessity of obtaining consent from a legitimate biological parent under the special circumstances where the parents have become divorced and the new spouse of the parent having custody desires to adopt a child of the first marriage. Nothing in the statute grants a stepfather any legal rights in these circumstances. Nothing in the statute requires that the court considering the adoption must grant it merely because the technical conditions of the statute are met. The purpose of the statute, by its very terms, is merely to substitute for consent, otherwise necessary for adoption, the fact of failure to provide support. The support must be court-ordered if the party owing it is within the state; if the party is a non-resident, a court order is not necessary.
Despite these comments the approval of an adoption is not entirely within the discretion of the trial court. In Adoption of Edwards, 369 So.2d 210 (La.App. 3rd Cir.1979), we noted that adoption should be granted in the absence of extenuating circumstance or “just cause We also noted that just cause was “a jurisprudential addendum to the statute”.
Latiolais at 559 (Footnote omitted; first, third and fourth emphasis added). Inasmuch as just cause has already been addressed, I see no reason to repeat those comments.
As I see it, adoption under La. Ch.Code art. 1245 requires proof of two elements: 1) unjustified non-support by a parent under a court order to provide child support; and 2) that the adoption would be in the best interests of the child or children. Both of these elements are factual determinations to be made by the trial court subject to the manifest error rule.
In sum, I find no error by the trial court. I would affirm its judgment and allow the adoption of K.H. and L.H. by their step-mother, Petitioner, K.L.H.

. La. Ch.Code art. 1245(C)(1) current provides:
C. When the spouse of a stepparent petitioner has been granted sole or joint cústo-dy of the child by a court of competent jurisdiction or is otherwise exercising lawful custody of the child and any one of the following conditions exists:
*713 (1) The other parent has refused or failed to comply with a court order of support without just cause for a period of at least six months.